## Case No. 18,193.
### The YUBA.

[4 Blatchf. 352; 1 16 Leg. Int. 317; 41 Hunt, Mer. Mag. 709.]

Circuit Court, S. D. New York.    Sept. 17, 1859.

BOTTOMRY BOND — REPAIRS OF VESSEL — COMMISSIONS AND PREMIUM.

1. Where a vessel entered a port of distress, and necessary repairs were made upon her on her credit, and afterwards, it being impossible to procure funds in any other way, a loan was made on bottomry to pay for the repairs, and the money was applied to paying for them: *Held*, that it was no objection to a recovery on the bottomry bond, that the repairs were made before the loan was effected.

[Cited in The Kathleen, Case No. 7,624; The Edward Albro, Id. 4,290.]

2. It having been necessary to discharge the cargo, to enable the extent of the damage to the vessel to be ascertained and the repairs to be made, the bill of a stevedore was a proper charge, as incidental to the repairs.

3. So, also, a charge for commissions in procuring the loan was proper, as incidental to the loan, it being impossible to raise the loan only through an agent.

4. Charges for repairs and other expenses allowed, as being customary at the bottomry port, although high, and a premium of twenty per cent. on the bottomry bond also allowed.

5. Some of the charges might be reduced, as between the claimants and the persons rendering the services, but the lender upon bottomry in good faith, and under circumstances which justified the loan, cannot be held responsible for the reasonableness of the charges in the repair of the vessel.

[Cited in The Archer, 15 Fed. 279.]

This was a libel in rem, filed in the district court against the bark Yuba, to recover the amount of a bottomry bond on the vessel, executed at New Orleans. [The vessel was in New Orleans in distress, and was repaired under the directions of her master, and the money advanced by the firm of Ad. Odier, Stouse & Leisy, who took this bond for the amount with maritime interest of 20 per cent. and afterwards transferred it to the libellant. The money advanced was used for paying various bills for discharging the vessel previous to the repairs, for the bills of repairs, and commissions for procuring the advance, etc., and after the bills were paid there remained a balance of $192.44, which was handed to the master of the vessel. Judge Betts, in the district court, decided that the circumstances of the case were calculated to throw suspicion upon the good faith of the loan, and gave a decree for the libellant for only $4,000, with leave to make a reference and show whether claims which were liens on the vessel were paid by this loan to a greater amount. (Case No. 11,-920.)] 2 The district court subsequently dismissed the libel, [case unreported,] and the libellant appealed to this court.

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
2 [From 41 Hunt, Mer. Mag. 709.]

Francis R. Coudert, for libellant.

Charles Donohue, Dexter A. Hawkins, and Joseph Lovell, for claimants.

NELSON, Circuit Justice. I am satisfied, that the repairs of the vessel at New Orleans, into which port she entered in distress, were necessary; and that the money was lent on the bottomry bond in good faith, for the purpose of paying for those repairs, and was applied to paying for them.

The objection, that the repairs were made before the loan was effected, and, hence, that the loan was not necessary in order to procure the repairs and enable the vessel to proceed on her voyage, is not tenable. The repairs were made upon the credit of the vessel, and the loan was indispensable to relieve her from the charges.

The discharge of the cargo became necessary, to enable the surveyors to ascertain the extent of the damage, and the ship master to make the repairs. That service was incidental to the repairs, and without it they could not be made, and, hence, the stevedore's bill was a proper charge. So, in respect to the commissions for the procurement of the loan. They were incidental to the loan itself, as it could be raised, in the given case, only through an agency. This principle is applicable, also, to several other items objected to.

The charges for the repairs and other expenses connected therewith are high, and may be unreasonable; but, the weight of proof shows that they are the customary charges and expenses in the port of New Orleans. The premium of twenty per cent. on the bottomry bond is objected to as exorbitant and out of all proportion to the risk, but I cannot so hold, upon the proofs in the case.

If the question was between the claimants and the persons rendering the services to the vessel, I might be disposed to cut down some of the charges, notwithstanding the evidence in support of them. But I think that the lender upon bottomry in good faith, and under circumstances which justified the loan, cannot be justly held responsible for the reasonableness of the charges in the repair of the vessel. He would be required, if held to this responsibility, to take upon himself the burden of contracting for or superintending all repairs.

Reasonable exertions were made by the consignee of the vessel to procure the funds from her owners and agents in New York, but they declined making the advances, or rather admitted their inability to make them, and the parties at the port of distress were left to raise the money as they best could.

Upon this view of the case, I must reverse the decree below, and decree, in favor of the libellant, the amount of the bottomry bond, except the $192.44 paid to the captain.